DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARLIE WYNE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-1940

[July 29, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Richard Oftedal, Judge; L.T. Case No. 2008CF004603BXX.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Allen R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Charlie Wyne appeals from three convictions for first degree murder with a firearm and four convictions for attempted first degree murder with a firearm, for which he was sentenced to seven consecutive life terms. He claims that the trial court erred in denying his motion to suppress his statement made to authorities, while he was being detained on unrelated federal charges. He reasons that the attorney representing him on the federal charges should not have allowed him to speak with authorities without immunity. We conclude that the court did not err, as appellant's statement was made voluntarily and with knowledge that no immunity would be conveyed. It was also not ineffective assistance of counsel, because the Sixth Amendment is offense specific, and, at the time of the statement, his federal attorney was not representing him in connection with these uncharged offenses. He also challenges several evidentiary rulings—specifically use of a prior consistent statement, admission of an excited utterance, and use of an out-of-court self-identification statement—none of which were error and, even if error, were harmless. Finally, he contends that the court failed to afford him the opportunity to represent himself after he sought discharge of his attorney. Because he

asked for substitute counsel, and not self-representation, we conclude that no error occurred. We thus affirm.

This case involves what the state contended was a murder-for-hire scheme, in which appellant was paid $5,000, by a man with the street name of "Bam," to kill several men as a revenge killing for the murder of Bam's cousins. On the date of the murders, two or three men got out of a car and opened fire on a group of men who were playing dominoes and gambling in a backyard. Three men were killed. Four men were wounded. According to the state, the men participating in the murders were appellant, Jarvis Jackson, Patrick Thompkins and Linwood Lewis. During the melee, one of the shooters, Patrick Thompkins, was himself shot and was taken by appellant and Lewis to a hospital a few minutes after the shooting. After taking Thompkins to the hospital, appellant and Lewis left. A stolen vehicle was abandoned about a quarter of a mile from the hospital. Police recovered a ski mask in the car with DNA on it, the majority of which matched appellant's DNA. In the police investigation which followed, it was discovered that appellant took a gun to his cousin's home where police ultimately retrieved it. The gun was test fired by police, and the bullets matched the bullet casings found at the scene of the shooting.

Several months later, appellant, who was in a federal detention facility on unrelated charges, asked to speak with the police investigating the murders. Appellant, who was not under arrest on any charges relating to the homicide investigation, was interviewed by police with his attorney present and, according to the state, he confessed that Bam had given him $5,000 to do the hit. After an extensive and lengthy trial, at which multiple eyewitnesses to the crimes testified and the state introduced appellant's statements, the jury convicted appellant of all three murders and all four attempted murders. He was sentenced to seven consecutive life sentences. He now appeals.

Appellant first contends that the trial court erred in denying the suppression of the statements he made to the investigating detective while he was being detained on federal charges and before any charges being filed against him in this case. He argues that his attorney was ineffective, on the face of the record, for having allowed him to make a statement in the hopes of obtaining leniency on the federal charges without first obtaining immunity for him. However, as the trial court noted, a claim of ineffective assistance of counsel derives from the Sixth Amendment to the Constitution. *See Strickland v. Washington*, 466 U.S. 668, 683 (1984). "[T]he Sixth Amendment right to the assistance of counsel is 'offense specific' and applies only to the offense or offenses with which the defendant has actually been charged, and not to any other offense he may

2

have committed but with which he has not been charged." *Scott v. State*, 66 So. 3d 923, 933 (Fla. 2011) (quoting *Ibar v. State,* 938 So. 2d 451, 470 (Fla. 2006)). Because he had not been charged with these offenses at the time of the statement for which he sought suppression, he cannot claim ineffective assistance of counsel. His federal attorney was not representing him in connection with the charges in this case.

Appellant claimed in his motion to suppress that his confession was not voluntary, and was caused by government trickery, under the guise that his statement would be immunized. After a full evidentiary hearing, the trial court found as a factual matter that this was simply untrue, and that his statement was voluntary. At the time of the statement appellant was in federal custody and had called the detective in charge of the murder investigation, wanting to speak with him. The detective told appellant that an Assistant U.S. Attorney and appellant's federal counsel would have to be present.

A meeting was then set, where appellant, his federal counsel, an Assistant U.S. Attorney, and two detectives were present. Appellant had not been arrested for any charges connected with the murders. His attorney thought he might be a person of interest but was not a suspect. Appellant would not talk to his attorney about what he intended to say to the murder investigator.

The participants discussed a proffer letter which would provide him immunity from non-violent crimes, but the Assistant U.S. Attorney told appellant directly that he would not obtain immunity for any crimes of violence. The appellant refused to sign the proffer agreement but went ahead and spoke to the detective with his attorney and the Assistant U.S. Attorney present. As the trial court found,

> Further, no threats were made, no promises were made, and no deals were discussed. The Defendant chose to make statements to law enforcement regarding his involvement in certain crimes which involved violence. During this statement, the Defendant freely and voluntarily made a statement implicating him in the alleged crimes which formed the basis for the charges in this case. These statements were made prior to the Defendant being charged in the instant case.

The court concluded:

> It is clear that in this case, the Defendant was informed at the outset, not only by [the Assistant U.S. Attorney] but also by

3

[appellant's counsel], that he would not receive immunity for crimes which involved violence. No promises were made which would have induced the Defendant to make statements, or which would constitute impermissible *quid pro quo* as is necessary in order to establish that a confession is involuntary under Florida law.

Under a totality of the circumstances test, the trial court clearly did not err in denying the motion to suppress the confession as involuntary. *Traylor v. State*, 596 So. 2d 957, 964 (Fla. 1992) (a reviewing Court must look to the totality of the circumstances to determine whether a confession was the product of free and rational choice rather than unrealistic hope and deluded notions of one's true position in a given case based on an officer's conduct).

During the trial of the case, appellant's counsel made several evidentiary objections, which are raised on appeal, but we conclude the trial court correctly overruled the objections. He first objected to the state's eliciting, on rebuttal, a prior consistent statement from the investigating detective. On direct, the detective had claimed that in appellant's statement to the detective, appellant had said, "I did it." The defense attacked this on cross-examination noting that it was not in the detective's report of the conversation. On rebuttal, the state sought to offer similar testimony that the detective gave in his deposition, taken after the report but years before the trial, to show that his trial testimony was not a recent fabrication. We conclude, as did the trial court, that the statement was proper pursuant to section 90.801(2), Florida Statutes (2013), which provides:

> (2) A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
>
> * * *
>
> b) **Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of improper influence, motive, or recent fabrication**[.]

(Emphasis supplied.) The detective testified at trial and was subject to cross-examination, and a reasonable inference from the defense's cross-examination of the detective was that his trial testimony was the first time

4

the detective "remembered" that the defendant had said "I did it," referring to the murders, and thus was a recent fabrication.

This case is unlike *Peterson v. State*, 874 So. 2d 14, 17 (Fla. 4th DCA 2004), on which appellant relies. There, our court found that a law enforcement officer could not testify to a witness's prior consistent statement, because we concluded that the defense had not attacked the witness's statement at trial as a recent fabrication. Here, the trial court found that the cross-examination inferred that the detective's testimony was recently fabricated for trial. Both prongs of the rule having been satisfied in this case, the court did not abuse its discretion in allowing the rebuttal evidence.

As to appellant's claim that a statement to a testifying officer by an unknown male at the scene of the shooting should not have been admitted as an excited utterance, we also conclude that the trial court did not abuse its discretion in admitting it. An excited utterance is "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." § 90.803(2), Fla. Stat. (2013). The officer who testified to the excited utterance was the first officer on the scene of the murders, within about fifteen minutes of the shootings. The officer told the jury: "[I]t was pretty chaotic; people screaming, bodies on the ground, every direction, everywhere, I looked, people running. It was just chaos." Others on the scene who were not victims were "panicked, running around, lots of screaming, crying[.]" She testified that when she first exited her vehicle, a male came running up to her, panicked and excited, speaking rapidly. When she asked him what happened, he told her "that he saw three or four black males with black T-shirts over their face and that was it. And they left in a black Intrepid, in an unknown direction."

Appellant asserts that the statement of the unknown witness could not be an excited utterance, because it was made after the event, when the witness had had the opportunity for reflective thought, in response to a police investigation, and there was no showing that the unknown witness was excited. Because there was evidence that the statement was made very shortly after the shooting when the scene was still in a state of "chaos" and the officer described the witness as panicked and nervous, appellant's claims that the statements were reflective and not based upon excitement at seeing a startling event are unfounded. He also contends that the statement was made during a police investigation, because the officer asked him "what happened." The fact that an officer says "what happened" when arriving freshly on the scene of an unfolding crime does not in all cases convert the interaction, and statements uttered immediately

thereafter, into ones which lack the indicia of an excited utterance. *See, e.g., Hayward v. State*, 24 So. 3d 17, 29-30 (Fla. 2009). Where the declarant is still under the stress of an exciting event (Who can say that witnessing three people murdered and four other people shot is not a stressful event?), a statement can qualify as an excited utterance. *Id.* Moreover, the admission of the statement was harmless beyond a reasonable doubt, because another witness testified at trial to essentially the same information. *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

In his last claim of evidentiary error, appellant contends that the court erred in admitting the self-identification of his co-conspirators at the hospital where Patrick Thompkins was taken after the melee during which he was shot. The police officer on duty at the hospital when the men came into the emergency room testified that two men, one of whom was appellant, brought a man with a gunshot wound into the hospital. Over objection, the court allowed the officer to testify that the wounded man identified himself as "Patrick Thompkins" and the second man identified himself as "Linwood Lewis." Appellant argues that this self-identification was inadmissible. The court did not abuse its discretion, as the statements by co-conspirators could be considered an admission under section 90.803(18)(e), Florida Statutes (2013). *See Leigh v. State*, 967 So. 2d 1102, 1104 (Fla. 4th DCA 2007). In any case, any error would have been harmless because appellant admitted in his statement to police that he and Linwood Lewis had taken Patrick Thompkins to the hospital.

Finally, appellant contends that the court erred in failing to offer him the right to self-representation when he moved to discharge his trial counsel. This issue has no merit. In *State v. Craft*, 685 So. 2d 1292, 1295 (Fla. 1996), the supreme court held that a trial court has no duty to inform a defendant of a right to self-representation where the defendant has not expressed a desire to represent himself. Here, the trial court asked appellant, "[A]re you asking to represent yourself in this case or are you going to be asking the Court to appoint a court appointed lawyer to represent you[?]" Appellant unequivocally responded, "I'm going to need representation due to my lack of knowledge of law." The court committed no error.

Finding no error, we affirm the appellant's convictions and sentences.

GROSS and FORST, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***