DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL BOATWRIGHT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-0975

[July 9, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Usan, Judge; L.T. Case No. 18008318CF10A.

Amy M. Morse of King | Morse, PLLC, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Lindsay A. Warner, Senior Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his conviction and sentence for first degree murder with a firearm and armed robbery with a firearm. The defendant argues the trial court erred in numerous rulings on his motions to sever the trials and suppress evidence, and on his objections to certain testimony, among other issues. We affirm on all issues. We write to address the defendant's argument that the trial court erred in denying his motion to sever his trial from that of his co-defendants.

- ***The Facts***

The victim, known professionally as "XXXTentacion," was shot and killed during an armed robbery in the parking lot of RIVA Motorsports in Deerfield Beach, Florida. Surveillance video captured two masked men exit a dark SUV, confront the victim in his vehicle, and shoot him before fleeing with a Louis Vuitton bag containing $50,000 in cash.

Law enforcement quickly identified co-defendant Dedrick Williams ("Williams") as a suspect based on surveillance footage showing him purchasing masks at RIVA Motorsports shortly before the shooting. Williams' girlfriend, Tennell Carter ("Carter"), told police he admitted to being present during the robbery and murder with three other men. Williams later confirmed that he went

to the store with three people, two of whom had committed the shooting. Williams did not name the other three people.

Further investigation, including surveillance video, forensic evidence, and cell phone records, led detectives to identify the three other suspects including the defendant. The defendant's fingerprints were found on the getaway SUV's exterior, and his DNA was found on a mask recovered from the vehicle.

The defendant was seen on surveillance video with two other co-defendants at an apartment complex shortly after the shooting. His phone contained photographs taken hours after the murder showing him posing with large amounts of cash. The phone's GPS data also showed the phone moving from near the crime scene to the apartment complex in the hours after the shooting.

The State indicted the defendant and all co-defendants on charges of first-degree murder with a firearm and armed robbery with a firearm. Prior to trial, the defendant moved to sever his case from his co-defendants' cases. He argued a joint trial would violate his right to confrontation if the State introduced his co-defendants' statements implicating him. He also argued severance was necessary because the State planned to introduce prejudicial evidence, including photographs and alleged gang affiliations, that would be admissible against his co-defendants, but not him. After a hearing, the trial court denied the motion to sever.

The defendant also filed several pretrial motions to suppress evidence obtained through search warrants, including his DNA, fingerprints, cell phone data, and cell phone records. He argued the warrants lacked probable cause to believe he committed the crimes, failed to establish a nexus between the evidence sought and the criminal activity alleged, and were overbroad in the scope of data and records requested. After a hearing, the trial court denied the motions, finding the warrants were supported by probable cause and sufficiently particularized.

During the State's case, co-defendant Robert Allen ("Allen") testified about the defendant's involvement in the crimes pursuant to a plea deal. He detailed how he and the others planned to rob the victim and then carried out the robbery and shooting. The defendant was the shooter. On cross-examination, the defendant sought to impeach Allen with evidence that he faced up to 60 years in prison on violation of probation ("VOP") charges but was sentenced to just five years after cooperating against the defendant. The trial court limited the defendant's cross-examination and prohibited this line of questioning because the record showed Allen resolved his VOP charges through an open plea to the court, not a negotiated deal with the State.

The State also called Williams' girlfriend, Carter, to testify about incriminating statements made to her on the night of the shooting. She testified that Williams

2

told her he went to RIVA Motorsports that day with three other people, saw the robbery and shooting occur, and personally knew the perpetrators. The defendant objected and renewed his motion to sever, arguing this hearsay testimony violated his right to confrontation. The trial court overruled the objections, finding the statements non-testimonial and sufficiently redacted of any direct reference to the defendant.

Other key state witnesses included the detective and James Kempvanee ("Kempvanee") from the Broward Sheriff's Office. The detective testified about the cell phone evidence showing the defendant's phone communicating with his co-defendants' phones and connecting to cell towers near RIVA Motorsports at the time of the shooting. Kempvanee presented a detailed PowerPoint mapping out the GPS locations and the defendant's and co-defendants' cell phone movements on the day of the crimes, showing them together near the scene. The defendant objected to Kempvanee's testimony as improper expert opinion and a discovery violation, but the court overruled the objections.

Other issues arose when Allen testified the defendant was a gang member and his job was "robbing people[.]" The defendant moved for a mistrial, which the court denied. Photographs from Williams' phone showing alleged gang signs were also admitted over the defendant's objection.

After an eight-week trial, the jury found the defendant guilty as charged. The jury also made specific findings that the defendant actually possessed and discharged a firearm resulting in the victim's death. The court sentenced the defendant to life in prison.

From his conviction and sentence, the defendant now appeals.

- ***The Analysis***

The defendant's first issue concerns whether the trial court abused its discretion in denying his motion to sever and admitting inadmissible hearsay testimony from Carter about statements her boyfriend Williams made implicating the defendant in the crime. The State responds the testimony was properly admitted as a statement by a party opponent under the hearsay exception, and no statements naming the defendant were admitted.

We review orders on motions to sever for an abuse of discretion. *Gonzales v. State*, 9 So. 3d 725, 726 (Fla. 4th DCA 2009) (citing *Crossley v. State*, 596 So. 2d 447, 450 (Fla. 1992)).

Florida Rule of Criminal Procedure 3.152(b)(2) provides:

3

If a defendant moves for a severance of defendants on the ground that an oral or written statement of a codefendant makes reference to him or her but is not admissible against him or her, the court shall determine whether the state will offer evidence of the statement at the trial. If the state intends to offer the statement in evidence, the court shall order the state to submit its evidence of the statement for consideration by the court and counsel for defendants and if the court determines that the statement is not admissible against the moving defendant, it shall require the state to elect 1 of the following courses:

(A) a joint trial at which evidence of the statement will not be admitted;

(B) a joint trial at which evidence of the statement will be admitted after all references to the moving defendant have been deleted, provided the court determines that admission of the evidence with deletions will not prejudice the moving defendant; or

(C) severance of the moving defendant.

Fla. R. Crim. P. 3.152(b)(2).

The admission of a non-testifying co-defendant's statement that expressly implicates the defendant violates the defendant's right to confrontation, even if the court instructs the jury to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-28 (1968). Such statements are so "powerfully incriminating" that a jury cannot be expected to disregard them even with a limiting instruction. *Id.* at 135-36. However, *Bruton* is limited to facially incriminating confessions. *See Richardson v. Marsh*, 481 U.S. 200, 208-09 (1987). Statements that only become incriminating when linked to other evidence do not implicate the Confrontation Clause and can be admitted with a proper limiting instruction. *Id.*[1]

Statements by a party opponent are admissible under section 90.803(18)(a), Florida Statutes (2022), as an exception to hearsay. *See Morris v. State*, 233 So. 3d 438, 446 (Fla. 2018). Nothing requires that party admissions be trustworthy or against the party's interest to be admissible. *Strong v. Underwood*, 275 So. 3d 760, 765 (Fla. 5th DCA 2019) (citing *Ring Power Corp. v. Condado-Perez*, 219 So. 3d 1028, 1034 (Fla. 2d DCA 2017)).

---

[1] The U.S. Supreme Court recently reiterated *Bruton's* rule in *Samia v. United States*, 599 U.S. 635, 653 (2023) (citing *Richardson*, 481 U.S. at 208).

Any error in admitting statements that only indirectly implicate a co-defendant can also be harmless. Harmless error analysis focuses on the effect the error had on the triers of fact. *Goodwin v. State*, 751 So. 2d 537, 540 (Fla. 1999) (citing *Chapman v. California*, 386 U.S. 18, 25-26 (1967)). Otherwise, prejudicial statements can be harmless "because another witness testified at trial to essentially the same information." *Wyne v. State*, 189 So. 3d 840, 845-46 (Fla. 4th DCA 2015) (citing *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986)).

Here, the trial court properly denied the defendant's motion to sever. In accordance with Rule 3.152(b)(2)(B), the trial court instructed the State to tailor Carter's testimony about Williams' statement to remove any reference to the defendant. The State did not elicit any testimony naming the defendant. This satisfied the Rule's redaction requirements. *See* Fla. R. Crim. P. 3.152(b)(2)(B).

Moreover, the hearsay statement was not the type of "powerfully incriminating" confession covered by *Bruton*, 391 U.S. at 135-36. The statement did not directly accuse or facially incriminate the defendant. Carter testified Williams told her he witnessed the crime with three other unnamed people. This reference required a link to other evidence to implicate the defendant and did not violate the Confrontation Clause or necessitate severance. *Samia*, 599 U.S. at 653.

The subject testimony was also properly admitted as a statement by a party opponent under section 90.803(18)(a). *Morris*, 233 So. 3d at 446. Williams' statement to Carter about his own involvement in witnessing the robbery and murder was an admission with no requirement that it be trustworthy or against his penal interest. *Strong*, 275 So. 3d at 765.

Finally, any error in admitting the testimony was harmless beyond a reasonable doubt. *Goodwin*, 751 So. 2d at 540. Allen testified extensively about the defendant's direct involvement in the murder, including that the defendant was the shooter. Thus, the subject testimony was merely cumulative. *See Wyne*, 189 So. 3d at 845-46.

The trial court properly denied the defendant's motion to sever, and correctly limited Carter's testimony to exclude any direct reference to the defendant. And last, any potential error was harmless considering the other substantial evidence of guilt presented at trial. We therefore affirm.

*Affirmed.*

DAMOORGIAN and LEVINE, JJ., concur.

* * *

5

*Not final until disposition of timely filed motion for rehearing.*