DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARLES ALFORD,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-0669

[April 2, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 22-7409CF10A.

Albert W. Guffanti of Albert W. Guffanti, P.A., Miami, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

Charles Alford appeals his convictions for second-degree murder and possession of firearm by a convicted felon. We affirm the convictions in all respects.

### *The Charges*

The State charged Alford and Katherine Farris[1], as principals, with second-degree murder with a firearm for the death of the victim, Terrell McCrea. Additionally, the State charged Alford with possession of a firearm by a convicted felon and Farris with carrying a concealed firearm without a license. Alford and Farris proceeded to a joint trial on the murder charge against both of them and the firearm charge against Farris,

---

[1] By a separate opinion, we have reversed Farris's conviction for second-degree murder and remanded for a new trial. *See Farris v. State*, No. 4D2024-0617 (Fla. 4th DCA 2025). The statement of facts in the two opinions are largely similar, but we have focused on the facts pertaining to each defendant in their respective opinions.

with the firearm charge against Alford being severed and tried separately following the verdicts in the joint trial.

### *The Theories at Trial*

The State's theory was that Alford was guilty of second-degree murder as the shooter and that Farris was guilty of second-degree murder as a principal because she gave him the firearm. Alford's theory of defense was to raise reasonable doubt as to his identification as the shooter.

### *The Evidence at Trial*

The incident was captured on a convenience store's surveillance videos without audio.

At about 2:49 a.m. on July 18, 2022, a male (later identified as Alford) and a female (later identified as Farris) walked into the convenience store. They purchased a Reese's Peanut Butter Cup and other items at 2:53 a.m. The transaction was completed with Farris's member rewards identification number. The cashier recalled the female's hat being "really low."

The male in the video wore white shoes, black shorts, and a black tank top. He had tattoos on his forearms, as well as a beard that was consistent with his look at the time of his arrest.

The female in the video wore a camouflage cap that said "BackWoods" and a t-shirt with a cat wearing a crown. A close-up of her face appears in the video. A police officer reviewed the surveillance footage and described the female as "wearing the camo hat and the black t-shirt with the design in the front," adding that "she had very distinguishable tattoos on both her right and left thighs."

Alford and Farris exited the convenience store and walked to the bus stop around the corner.

At 2:59 a.m., the victim walked past Farris at the bus stop and waited. At 3:01 a.m., Alford and another male approached Farris. Both men stood close to Farris. Alford got in Farris's face and moved his arms as if arguing with her. Farris stepped away, and the other male stepped between them. The three of them then had a conversation while facing away from the others at the bus stop. The other male walked to a vehicle while Farris and Alford appeared to talk. The other male then rejoined Farris and Alford.

2

At 3:03 a.m., Farris abruptly turned away from Alford and threw her cup and its contents to the ground before walking away. Farris passed by the convenience store's entrance and went out of camera range into an alley past the building. Alford and the other male briefly spoke and then followed Farris.

Between 3:04 and 3:05 a.m., Alford caught up to Farris. Shortly thereafter, Farris left the alley and walked back along the sidewalk in front of the convenience store. Farris attempted to enter the convenience store but was prevented from doing so by a worker. Alford followed Farris at a short distance.

At 3:05 a.m., Farris rounded the corner of the convenience store on the side with the bus stop. Between 3:05:51 and 3:05:54 a.m., she reached into her purse, pulled out a firearm, and placed it on the ground next to the propane tank cage. As Alford rounded the corner about a second or two later, Farris looked toward him and waved or indicated with her left hand.

Alford stopped next to the firearm, looked around, picked it up, and tucked it into his waistband. Alford then went toward the front of the convenience store and briefly moved out of camera range before turning around and walking behind the bus benches.

At 3:06 a.m., as the victim was waiting at a bus bench, Farris walked past the bench, stopped, and turned toward the victim for about ten seconds. Although the video has no sound, Farris and the victim appeared to be having a conversation at a distance. If a conversation occurred, the video is unclear as to who started the conversation, as Farris had initially walked past the victim. This interaction prompted the victim to move his arms up slightly and take a few steps forward, while Farris turned and took a few steps away from the bus stop.

Meanwhile, as the interaction between Farris and the victim was ending, Alford walked behind the bus bench and headed toward the victim. As Alford went around the bus bench and approached the victim, Farris turned back around and took a few steps toward the two men. The victim turned around, faced Alford, and started backing away. With Farris watching, Alford swung at the victim with his right hand but missed, prompting the victim to back into the roadway.

3

Alford then lifted his right arm and pointed a firearm at the victim. A muzzle flash emanated from the object in Alford's hand at 3:06:28 a.m. Alford and Farris immediately left the scene in the same direction.

The victim ran away, but later collapsed in the road and died. The cause of death was a single gunshot wound to the torso.

The police arrived on scene to investigate the shooting. A fired casing was found in the roadway next to the bus stop.

A Broward Sheriff's investigator ran facial recognition technology on a still shot from the surveillance video and identified Alford as the male suspect with 95.7 percent accuracy. When the convenience store's cashier was shown a series of photographs, she identified Alford with 50 percent certainty, but she identified another male with 80 percent certainty.

A vehicle of interest had moved "before and after the incident near the area of the . . . incident." Police executed a search warrant on the vehicle at a tow yard. Inside the vehicle, police found clothing that matched the clothing worn by the male and female subjects in the surveillance videos, including a black tank top, white sneakers, a t-shirt with a cat wearing a crown, and the camo hat with the words "BackWoods." After the search of the vehicle in the tow yard, a Sheriff's sergeant located Alford and Farris, who were together when they were arrested. The firearm was not recovered.

After their arrest, officers took photographs of Alford and Farris. The photographs of Alford depict a beard and tattoos consistent with the beard and tattoos of the male suspect on the surveillance video. The photographs of Farris show tattoos consistent with the tattoos of the female suspect on the surveillance video.

While in jail, Farris made a phone call[2] in which she said, "I know where it's at," and "I will tell them if they make a plea bargain for me":

> OPERATOR: Hello. This is a collect call from Katherine –
>
> FEMALE VOICE 1: (unintelligible) where that thing is at. You understand me?
>
> FEMALE VOICE 2: What?

---

[2] This is the version of the jail call from the audio exhibit, rather than the version transcribed by the court reporter.

FEMALE VOICE 1: I know where it's at.

FEMALE VOICE 2: So why don't you tell them?

FEMALE VOICE 1: I will tell them if they make a plea bargain for me -- you understand me.

FEMALE VOICE 2: Yeah, but you should have told them that when you sat right there, when they were questioning you.  So what do you want me to tell this man, that if they can offer you a plea bargain that you can tell them -- (Dogs barking/inaudible)

FEMALE VOICE 1: Yes, I will.

FEMALE VOICE 2: All right, that's what I will tell the officer, I will contact the officer Monday morning at eight o'clock.

FEMALE VOICE 1: (unintelligible) It ain't far.

FEMALE VOICE 2: You're lucky I'm where I'm at and not in Florida 'cause I would go get it, not touch it, and call them.

Alford's counsel objected to the use of the jailhouse call at trial, claiming that the State had represented that it was not going to use "any statements."  Alford's counsel argued that the jail call "counts as a statement."  The prosecutor maintained that she had told the defense attorneys that she *would* be using the jail calls, and that her representation pertained to the defendants' recorded statements given to detectives.  Alford's counsel conceded that he had received the jail call recording in discovery.  He maintained his objection based on surprise.

The prosecutor stated: "I just don't understand how they are saying they are shocked on evidence that has been given to them."  Alford's counsel replied that his shock was from a "professional standpoint."

Ultimately, the court ruled that no discovery violation had occurred and that the jail call was admissible.

### *Verdict and Sentence*

The jury found Alford guilty of second-degree murder with a firearm. Following the bifurcated trial's second phase, the jury found Alford guilty

of possession of a firearm by a convicted felon.  Alford was sentenced to life in prison on the second-degree murder charge and to a concurrent term of 30 years in prison as a habitual felony offender on the firearm charge.

### *The Trial Court Did Not Err in the Admission of the Recording of Farris's Jailhouse Phone Call*

Alford first argues that the trial court's admission of Farris's jail call to an unknown female violated his due process and confrontation rights. Alford complains that the call implicated him in the homicide and violated those constitutional rights described in *Bruton v. United States*, 391 U.S. 123 (1968).

*Preservation*

Alford failed to preserve the constitutional objections to the admission of the recording of the jail house phone call that he raises on appeal.

Proper preservation of an issue for appellate review generally requires three components: (1) the party must make a timely, contemporaneous objection at the time of the alleged error; (2) the party must state the legal ground for the objection; and (3) the party's argument on appeal must be the specific contention asserted as legal ground for the objection below. *Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010).

Here, the constitutional objections that Alford raises on appeal were not preserved for appellate review because his objection below was based on surprise, not on a violation of *Bruton* or his confrontation rights.  Because the legal ground advanced on appeal is different from the legal ground advanced below, this issue is unpreserved.  Therefore, this court's review is limited to whether fundamental error occurred.

*Discussion on the Merits*

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." Amend. VI, U.S. Const.  In *Bruton*, the United States Supreme Court held that the admission of a co-defendant's confession in a joint trial violated the defendant's right of cross-examination secured by the Confrontation Clause "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [the defendant's] guilt."  391 U.S. at 126.

In *Samia v. United States*, 599 U.S. 635, 652 (2023), the Court explained that its "precedents distinguish between confessions that directly implicate a defendant and those that do so indirectly." The Court reiterated that "the *Bruton* rule applies only to 'directly accusatory' incriminating statements, as distinct from those that do 'not refer directly to the defendant' and 'bec[o]me incriminating only when linked with evidence introduced later at trial.'" *Id.* at 653 (citation omitted).

"Only testimonial statements cause a declarant to be a 'witness' within the meaning of the Confrontation Clause." *Howard v. State*, 254 So. 3d 1188, 1190 (Fla. 1st DCA 2018) (cleaned up). "'Testimonial' statements are those made with an expectation of being used in an investigation or prosecution of a crime, for example, those given to a police investigator, to a grand jury, at a preliminary hearing, or at a former trial." *Id.*

Here, the admission of Farris's jail call to an unidentified woman did not violate Alford's rights under *Bruton* and the Confrontation Clause.

First, the jail call did not "directly implicate" Alford. In the call, Farris merely said, "I know where it's at," and "I will tell them if they make a plea bargain for me." Farris did not mention Alford. Farris said nothing about any other person's involvement in the crime.

Second, the jail call was not a "testimonial" statement because Farris did not make the call with an expectation that it would be used in the investigation or prosecution of a crime.

The admission of the recording in question violated no constitutional right. No error, fundamental or otherwise, occurred.

### *The Trial Court Properly Declined to Grant Alford's Motion for Judgment of Acquittal*

Alford next contends that the trial court erred in denying his motion for judgment of acquittal because "the evidence was insufficient in many ways, including the lack of a finding that the 'firearm' in the video was a device capable of expelling a projectile, or linked in any manner to [him] because it was never recovered." Further, Alford argues, the evidence was insufficient to prove that he carried a firearm or shot the victim. Alford maintains that the only evidence of a shot was a witness's observation from the surveillance video of what "appeared to be a muzzle flash," which Alford argues was insufficient to prove guilt beyond a reasonable doubt.

*Preservation*

To preserve a claim of insufficiency of the evidence, a defendant must raise a timely challenge in the trial court. *F.B. v. State*, 852 So. 2d 226, 230 (Fla. 2003). The only two exceptions to this requirement are: (1) when the death penalty is imposed; and (2) "when the evidence is insufficient to show that a crime was committed at all." *Id.*

"A boilerplate motion for judgment of acquittal will not suffice to preserve the issue on appeal." *Hampton v. State*, 886 So. 2d 319, 320 (Fla. 4th DCA 2004). Also, "a party must obtain a ruling from the trial court in order to preserve an issue for appellate review." *Carratelli v. State*, 832 So. 2d 850, 856 (Fla. 4th DCA 2002).

Here, Alford failed to preserve this issue because (1) he did not obtain a ruling on his motion for judgment of acquittal, and (2) the grounds advanced on appeal are not the same as the ground advanced in his motion for judgment of acquittal. The only argument Alford made in his motion for judgment of acquittal was that he was not the person in the video. His motion for judgment of acquittal did not preserve any arguments that the evidence was insufficient to link the alleged firearm to him or to show that it was a device capable of expelling a projectile. And the trial court simply deferred ruling on the motion.

We therefore affirm due to lack of preservation. This was neither a death penalty case nor a case where the evidence was insufficient to show that a crime was committed at all, so no exception to the preservation requirement applies.

*Discussion on the Merits*

In spite of a lack of preservation, we nonetheless address the merits of this issue because of the possibility that it will arise again in a postconviction relief motion.

The test for the legal sufficiency of the evidence "is simply whether the State presented competent, substantial evidence to support the verdict." *Bush v. State*, 295 So. 3d 179, 200 (Fla. 2020). This standard now applies "in all cases where the sufficiency of the evidence is analyzed." *Id.* at 201.

"If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). "In moving

8

for a judgment of acquittal, a defendant admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." *Petit v. State*, 321 So. 3d 286, 290 (Fla. 4th DCA 2021) (cleaned up). All conflicts in the evidence and all reasonable inferences therefrom must be resolved in favor of the verdict on appeal. *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981).

"[A] defendant's use of a firearm during a crime can be established even if the gun is not recovered and introduced into evidence. Circumstantial evidence can be sufficient to establish the use of a firearm." *Mitchell v. State*, 698 So. 2d 555, 558 (Fla. 2d DCA 1997).

In *Johnson v. State*, 936 So. 2d 672 (Fla. 4th DCA 2006), we rejected an argument similar to the one Alford now advances on appeal. We held that the State presented sufficient evidence to support a conviction for second-degree murder with a firearm, even though none of the State's witnesses saw a gun or specifically testified that they saw the defendant shoot the victim. *Id.* at 673–74. In *Johnson*, the evidence showed that the defendant extended his hand toward victim's head while holding a silver object, witnesses heard several sounds consistent with gunfire, the defendant's hand was seen "jumping" with smoke and sparks coming out, and the victim fell over and died. *Id.*

Here, as in *Johnson*, the State presented sufficient evidence to support Alford's conviction for second-degree murder with a firearm. A rational trier of fact could find each element of the crime beyond a reasonable doubt. The video of the incident shows a man raising his right arm and pointing an object, which appears to be a firearm, at the victim. A muzzle flash can be seen in the video. The victim ran away and died shortly thereafter. The cause of death was a gunshot wound to the torso. The jury could reasonably infer that the object was a firearm and that the man with the firearm shot the victim.

The evidence also supported the State's contention that Alford was the shooter in the video. The photographs of Alford, taken upon his apprehension, closely resembled the shooter in the surveillance video. Additionally, facial recognition technology identified Alford as the man in the video with over 95% certainty. And Alford was with Farris when he was apprehended, which is further circumstantial evidence that he was the same man in the video.

For these reasons, the trial court did not err in declining to grant Alford's motion for judgment of acquittal.

### *No Ineffective Assistance of Counsel was Apparent on the Face of the Record, so the Issue Cannot be Raised on Direct Appeal*

Alford next argues that his trial counsel was ineffective for failing to file a *Bruton* motion to sever the defendants, which was necessary to shield him from inculpatory statements made by Farris.[3]

The general rule is that "an allegation of ineffective assistance of counsel should be raised in a motion for postconviction relief, rather than on direct appeal." *Grant v. State*, 864 So. 2d 503, 505 (Fla. 4th DCA 2004). "An exception to the general rule exists where both counsel's deficient performance and the prejudice to the defendant are apparent on the face of the record." *Id.* at 505. Such an exception applies "only 'when the ineffectiveness is obvious on the face of the record, the prejudice is indisputable, and tactical explanation is inconceivable.'" *Jones v. State*, 321 So. 3d 790, 801 (Fla. 4th DCA 2021) (quoting *Cohen v. State*, 230 So. 3d 18, 20 (Fla. 4th DCA 2017)).

On this record, no ineffectiveness of counsel occurred, and certainly none that rose to the extreme level required to raise the issue on direct appeal.

As explained above, the admission of Farris's jail call did not violate *Bruton*, as her statements in the jail call were not testimonial and did not directly implicate Alford. The State never introduced into evidence Farris's statement to police. Alford's defense strategy—to argue that he was not present at the scene and was misidentified—was not harmed by the joint trial or by Farris's statements in the jail call. The defenses presented by Alford (misidentification) and Farris (lack of intent) were not so antagonistic as to be mutually exclusive. Likewise, Farris's counsel's

---

[3] Alford raised essentially the same argument below at a *Nelson* hearing when he sought to discharge defense counsel because, among other things, defense counsel had failed to file a motion to sever his trial from Farris's trial. *See Nelson v. State*, 274 So. 2d 256, 258–59 (Fla. 4th DCA 1973) ("[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge. If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant.").

attacks in closing argument on the shooter did not affect Alford's defense that he was misidentified as the shooter. Accordingly, given the State's representation that it did not intend to introduce any statements that would cause a *Bruton* issue, Alford cannot show that his defense counsel's decision not to move for a severance fell below an objective standard of reasonableness or created a reasonable probability that the result of the proceeding would have been different.

### *Remaining Issues*

We have fully considered the point concerning prosecutorial misconduct and find it to be without merit. Although the prosecutor crossed the line of permissible conduct in certain instances, none of these transgressions significantly impacted the case against Alford. Finally, Alford's claim of cumulative error fails because his individual claims are either procedurally barred or meritless.

*Affirmed.*

CIKLIN and KUNTZ, JJ., concur.

\*         \*         \*

**Not final until disposition of timely filed motion for rehearing.**

11