22-1508 (L)
*United States v. Pierre*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of August, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> RAYMOND J. LOHIER, JR.,
> EUNICE C. LEE,
> *Circuit Judges*.

―――――――――――――――――――――――――――――

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                                          22-1508 (Lead)

RODNEY THOMAS, JR., MONTRELL DOBBS, JR., STANLEY PIERRE,

> *Defendants*,

RALPH PIERRE, FAROUQ FASASI,

> *Defendants-Appellants*.

―――――――――――――――――――――――――――――

For Appellee:                    STEPHANIE T. LEVICK, Assistant United States Attorney (Heather L. Cherry and Sandra S. Glover, Assistant United States Attorneys, *on the brief*), *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT.

1

For Defendant-Appellant:           AMEER BENNO, Benno & Associates, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Ralph Pierre ("Pierre") appeals from a judgment of conviction entered on July 13, 2022 by the United States District Court for the District of Connecticut (Underhill, *J.*).[1] Pierre was convicted, following a jury trial, of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and money laundering, in violation of 18 U.S.C. § 1957, for his role in a "money mule" ring that collected money from victims of online scams targeting the elderly. On appeal, Pierre challenges five aspects of his trial and sentencing: (1) that his trial counsel rendered ineffective assistance by not moving to sever, (2) that the district court erred by admitting a pretrial identification that was obtained using unduly suggestive procedures, (3) that the district court erred by allowing the government to elicit victim impact testimony, (4) that the evidence admitted at trial was insufficient, and (5) that the district court abused its discretion by declining to apply a four-point minimal participant reduction under U.S.S.G. § 3B1.2(a) at sentencing. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal to which we refer only as necessary to explain our decision to **AFFIRM**.

---

[1] Pierre's appeal is consolidated with No. 22-1922, the appeal of Defendant-Appellant Farouq Fasasi. We decide Fasasi's appeal in a separate summary order, which we file simultaneously with this summary order.

## I. Ineffective Assistance

Pierre argues that his lawyer rendered constitutionally ineffective assistance by not moving to sever his trial from that of two of his co-defendants—Farouq Fasasi ("Fasasi") and Rodney Thomas, Jr. ("Thomas"). Fasasi and Thomas were also charged with wire and mail fraud counts in addition to facing the same money laundering charges as Pierre. Pierre contends that he was prejudiced by the introduction of evidence against Fasasi and Thomas relevant to the wire and mail fraud counts—particularly testimony from the sympathetic elderly victims of the lottery and romance scams. Pierre separately argues that his counsel should have moved to sever pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), after learning that the government intended to introduce a videotaped pretrial statement from Thomas.

"In order to succeed on a claim that he has been denied constitutionally effective assistance of counsel, the defendant must show both (a) 'that counsel's representation fell below an objective standard of reasonableness' and (b) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. DiTomasso*, 932 F.3d 58, 69 (2d Cir. 2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Although "in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance," *Massaro v. United States*, 538 U.S. 500, 504 (2003), we will consider "ineffective assistance claims for the first time on direct appeal when their resolution is beyond any doubt or to do so would be in the interest of justice," *United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003) (internal quotation marks omitted). Here, we elect to decide Pierre's ineffective assistance claims because he cannot plausibly demonstrate prejudice.

First, there is no reasonable probability the district court would have granted a motion to sever made on the ground that Pierre would face unfair prejudice if tried alongside co-defendants who engaged in more severe misconduct.  As a general rule, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  "Differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."  *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (alteration accepted) (internal quotation marks omitted). Moreover, any spillover prejudice that may occur as a result of trying defendants jointly is generally corrected by an instruction that the jury is to consider each defendant individually.  *See United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997) (noting that spillover prejudice may be remedied through limiting instructions); *Samia v. United States*, 599 U.S. 635, 646 (2023) (endorsing the presumption that "jurors can be relied upon to follow the trial judge's instructions"). The district court issued just such an instruction in this case.

Pierre's contention that his counsel rendered ineffective assistance by not moving to sever based on Thomas's videotaped statement fares no better.  In *Bruton*, the Supreme Court held that a defendant's rights under the Confrontation Clause may be violated when, during a joint trial, a statement made by a non-testifying co-defendant that incriminates a defendant is admitted into evidence.  391 U.S. at 126.  However, a trial court may admit a redacted or altered confession from a co-defendant provided the redacted or altered statement does not "directly implicate" the defendant.  *Samia*, 599 U.S. at 652.  Here, Thomas's statement—redacted so Thomas references co-conspirators only using pronouns—did not directly implicate Pierre.  Nor are we persuaded by Pierre's argument that there was a *Bruton* error because jurors may have incorrectly assumed pronouns used by Thomas in the video referred to Pierre when they actually referred to other

4

conspirators. *See United States v. Lyle*, 919 F.3d 716, 734 (2d Cir. 2019) (finding the jurors would not necessarily believe neutral terms referred to the defendant because the case involved "an ongoing criminal enterprise where many people were involved"). Because there was no *Bruton* error, Pierre cannot demonstrate that he was prejudiced by his attorney's failure to move to sever on that ground.

## II. Photo Identification

At trial, the government moved pursuant to Federal Rule of Evidence 801(d)(1)(C) to introduce a postal worker's pretrial identification of Pierre as the individual who received packages of cash from scam victims that were addressed to "Ray Shaw." Pierre argues that the photo identification procedure police used to obtain the identification was unduly suggestive and the district court therefore erred in admitting it. "We review the District Court's admission of identification evidence for clear error, overturning its findings as to what procedures were used only if clearly erroneous and giving due deference to its assessment of the credibility of the witness." *United States v. Al-Farekh*, 956 F.3d 99, 109 (2d Cir. 2020) (internal quotation marks, citation, and alterations omitted).

Even assuming *arguendo* that the procedures used to obtain the identification were unduly suggestive, we discern no clear error. If an identification procedure is unduly suggestive, the "out-of-court identification may nonetheless be admissible if other factors indicate that the identification is independently reliable." *Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009). In performing this inquiry, we consider:

[1] the opportunity of the witness to view the criminal at the time of the crime,

[2] the witness' degree of attention,

[3] the accuracy of the witness' prior description of the criminal,

[4] the level of certainty demonstrated by the witness at the confrontation, and

[5] the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).   "None of these factors standing alone is dispositive of the existence of independent reliability; instead, reliability is assessed in light of the totality of the circumstances."   *Brisco*, 565 F.3d at 89 (internal quotation marks omitted).

Here, the witness had multiple opportunities to view Pierre accepting packages addressed to Ray Shaw.   She testified that she delivered one to two packages to Pierre's address per week, that many of the deliveries required the recipient's signature, and that Pierre and his housemates were often already outside when she made the deliveries.   The witness also remarked that she was "surprised by the high volume" of priority mail packages Pierre's address received as it was not "an area of New Haven that usually gets that kind of package."   App'x 1038.   And the witness made the identification while actively working as the postal worker assigned to the route encompassing Pierre's address.   Taken together, this is more than sufficient to conclude that the witness's identification was independently reliable.   The district court therefore did not clearly err in admitting the identification evidence.

## III.   Victim Impact Testimony

At trial, the government asked a victim of the romance scam to describe how the scam had affected her life.   She explained that the fraud devastated her finances and left her unable to support her children and mentally disabled brother in the way she had previously.   The victim also testified that the scam affected her social relationships and made it difficult for her to trust others.   None of the defendants objected to the admission of the testimony at trial.[2]   Pierre contends that the district court erred by not striking this testimony.   We disagree.

---

[2] After the witness finished testifying, Thomas's counsel told the court that he had been "going to object,

6

Though we ordinarily review evidentiary rulings for abuse of discretion, because Pierre failed to object at trial we review for plain error. *See Lyle*, 919 F.3d at 733–34. To meet the plain error standard, Pierre must establish that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Davis*, 82 F.4th 190, 196 (2d Cir. 2023) (quoting *United States v. Rosa*, 957 F.3d 113, 117–18 (2d Cir. 2020)).

Even assuming the admission of victim impact testimony was an error, Pierre cannot demonstrate that the error was clear or obvious. Some courts have held that the admission of victim impact testimony in fraud cases is some evidence of the schemer's intent, *see, e.g.*, *United States v. Cloud*, 680 F.3d 396, 402 (4th Cir. 2012), while other courts have held that allowing witnesses to testify about the impact fraud schemes have had on their lives is an abuse of discretion, *see, e.g.*, *United States v. Copple*, 24 F.3d 535, 545–46 (3d Cir. 1994). An error is not plain when courts are reasonably divided over a question or there is "no binding precedent from the Supreme Court or this Court." *United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) (internal quotation marks omitted). Accordingly, the district court did not plainly err here by allowing the challenged testimony.

---

but . . . didn't want to make an issue out of it with that witness" and that he "would object to any future testimony from other victims . . . . on those types of issues." App'x 718. Although the district court considered any objection raised by one attorney as being an objection raised by all three defendants' attorneys, Thomas's lawyer never actually objected to the testimony that Pierre now challenges on appeal.

## IV. Sufficiency of Evidence

Pierre argues that the evidence presented at trial was insufficient to show that he knew the funds at issue were derived from criminal activity.[3]    We disagree.

A defendant challenging the sufficiency of the evidence generally bears a "very heavy burden."    *United States v. Buck,* 804 F.2d 239, 242 (2d Cir. 1986) (quoting *United States v. Davis*, 767 F.2d 1025, 1040 (2d Cir. 1985)).    Although we review the sufficiency of the evidence *de novo*, *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014), we exercise an "exceedingly deferential standard of review," *United States v. Hassan,* 578 F.3d 108, 126 (2d Cir. 2008), and will "uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *United States v. Aguilar,* 585 F.3d 652, 656 (2d Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).    We thus view the evidence "in a light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government."    *United States v. Persico,* 645 F.3d 85, 104 (2d Cir. 2011) (quoting *United States v. Eppolito,* 543 F.3d 25, 45 (2d Cir. 2008)).

The government presented sufficient evidence to show that Pierre knew the funds at issue were derived from criminal activity.    The evidence introduced at trial showed that Pierre registered a purported charity—Global Protection Foundation ("GPF")—and opened four separate

---

[3] Money laundering has five elements: (1) the defendant engaged in a monetary transaction affecting interstate commerce, (2) the transaction involves criminally derived property worth more than $10,000, (3) the property was derived from a specified unlawful activity, (4) the defendant knew the transaction involved proceeds of a criminal offense, and (5) the transaction took place in the United States or the defendant is a U.S. person.    *See* 18 U.S.C. § 1957.    "Conspiring to launder money requires that two or more people agree to violate the federal money laundering statute, and that the defendant knowingly engaged in the conspiracy with the specific intent to commit the offenses that [are] the objects of the conspiracy."    *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (internal quotation marks omitted).    Pierre's sufficiency challenge is limited to whether the government sufficiently proved that he knew the funds at issue were derived from criminal activity.

business bank accounts for GPF for which he was the sole signatory. Nothing in the record indicates that GPF was registered as a non-profit or that the organization performed any charitable work. Rather, the government introduced evidence showing that within weeks of Pierre opening four separate GPF bank accounts, thousands of dollars were deposited into those accounts, and even after some accounts were closed for fraud, that Pierre continued to use other GPF accounts to transfer money. Evidence showed that Pierre transferred money from his GPF accounts to a Nigerian company that the conspiracy used as a vehicle to transfer victim funds to co-conspirators in Nigeria. The government also presented evidence that Pierre lived alongside several of his co-conspirators—including Pierre's roommate who testified at trial as a cooperating defendant. A witness also testified that they observed the residents of Pierre's house constantly fighting over packages delivered to the address. And other evidence showed that packages containing cash from victims were sent to Pierre at that address in both his true name and the alias Ray Shaw. On one occasion, a victim deposited a $20,000 cashier's check into a GPF account and Pierre withdrew $18,000 from the same account six days later.

A rational juror could reasonably have inferred from this evidence that Pierre knew the funds he received were derived from criminal activity. *See United States v. Santos*, 553 U.S. 507, 521 (2008) ("[K]nowledge that the transaction involves profits of unlawful activity . . . will be provable (as knowledge must almost always be proved) by circumstantial evidence.").

## V. Minimal Participant Reduction

Finally, Pierre argues that he was entitled to a four-point reduction in his offense level because he was a "minimal" participant in the scheme under the standards established by U.S.S.G. § 3B1.2. The minimal participant reduction applies when a defendant is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, cmt. n.4. The

9

defendant bears the burden of proving by a preponderance of the evidence that he is entitled to a role adjustment under this section. *See United States v. Wynn*, 37 F.4th 63, 67 (2d Cir. 2022). We "review the district court's findings of fact as to the defendant's role for clear error and reverse the district court's conclusion only for abuse of discretion." *United States v. Solis*, 18 F.4th 395, 401 (2d Cir. 2021) (internal quotation marks, citation, and alteration omitted).

The minimal participant determination is based on the "totality of circumstances," and the Guidelines recommend considering:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmt. n.3(C); *see also Wynn*, 37 F.4th at 67–68.

We discern no error in the district court's finding that Pierre was an active participant in the money laundering scheme and therefore not entitled to a role reduction. The district court found that Pierre created a sham charity and associated business accounts to facilitate the laundering of victim money. The court further found that the GPF business bank accounts were particularly valuable—as compared with personal bank accounts provided by other co-conspirators—because they allowed the conspiracy to circumvent restrictions on personal accounts that disallow deposits by individuals other than the account holder. The trial record also indicates that Pierre played an active role in collecting victim money, deposited and withdrew funds that

passed through the accounts he set up, and forwarded money to co-conspirators in Nigeria. There was also evidence that Pierre quit his job shortly after becoming involved in the scheme and that he spent victim money on personal expenses. That Pierre was involved in laundering only approximately $350,000 of the $5 million attributed to the scheme does not necessarily qualify him for a role reduction—particularly where his involvement in less than the total loss amount was already factored into the calculation of his offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(G). *See United States v. Finkelstein*, 229 F.3d 90, 98 (2d Cir. 2000).

\* \* \*

We have considered Pierre's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11